**IN THE COURT OF APPEALS OF IOWA**

No. 16-1904
Filed December 6, 2017

**EELEN YOUNG EBLING and ABBY LYON MCDONALD,**
    Plaintiffs-Appellees,

**vs.**

**SARAH HASKEN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

A former trust advisor appeals from the district court's decisions, removing the advisor and denying her the right to appoint her successor. **REVERSED AND REMANDED.**

Sean P. Moore of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellant.

Darin S. Harmon and Kelsey J. Streinz of Kintzinger, Harmon, Konrardy, P.L.C., Dubuque, for plaintiffs.

Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Sarah Hasken appeals from the district court's decisions, removing her as trust advisor and denying her the right to appoint her successor advisor. Hasken maintains both of the district court's decisions were in error. Specifically, Hasken claims her decision not to vote in one meeting and to "withhold" her vote at a second meeting did not constitute breaches of her fiduciary duty as a trust advisor, so the district court was wrong to remove her. In the alternative, she argues that if the court's decision to remove her stands, then she has the "inability" to serve and should be allowed to appoint her successor—as provided for in the trust instrument.

**I. Background Facts and Proceedings.**

The George L. McDonald Trust at issue was established in 1970 for the benefit of the plaintiffs, Eelen Young Ebling and Abby Lyon McDonald. Ebling and Abby McDonald, adult daughters of George L. McDonald, are the sole income beneficiaries of the trust. In the original action, there were a number of named defendants; all of the defendants except for Hasken are residuary beneficiaries of the trust. Only Hasken appealed the district court's rulings. The corpus of the trust is 1250 voting shares of A.Y. McDonald Industries, Inc. The trust instrument also establishes two trust advisors, each of whom vote one-half of the trust's shares. The trust advisors are fiduciaries, and "no advisor shall have any power or authority under any circumstance to act in a non-fiduciary capacity." At the time Ebling and Abby McDonald initiated this action, Sarah Hasken was one of the trust advisors and Robert McDonald was the other.

As of August 2014, Hasken was the vice president of and a board member for A.Y. McDonald Industries, Inc., as well as being one of the trust advisors.

On August 21, Robert McDonald informed Hasken he was eliminating her position as an officer of A.Y. McDonald Industries.

In response, Hasken sent a letter to the other members of the board of directors, asking them to call a special meeting to consider the action and informing the board that she did not believe Robert McDonald or the executive committee had the authority, under the bylaws, to take such action.

Then, at a September 2014 board meeting, Robert McDonald and the board of directors removed Hasken from her position as vice president.

The day after she was removed as vice president, Hasken sent her fellow board of directors another letter. In it, she warned the board of her belief "that [her] purported termination as an officer of the company is a continuation of the efforts of the executive committee to subvert the authority of the board of directors and to marginalize the duly elected directors of the company." She also included two "other examples of the executive committee's improper actions."

The next month, Robert McDonald asked for Hasken's resignation from the board of directors; she refused to resign. At a December special meeting of the shareholders, Hasken was removed from the board. Hasken did not attend the meeting, and she did not vote the 625 shares entrusted to her as a trust advisor on the question of her removal from the board. The votes cast were sufficient to remove Hasken. In her memorandum of authorities, Hasken states:

> As a result, since Hasken could not in good conscience vote for her own removal from the board and subsequent replacement with Ron [sic] McDonald's inexperienced sister, and since voting against

those actions would have no-doubt led to accusations by Rob McDonald that voting 'no' created a conflict of interest, Hasken decided to withhold her vote upon advice of counsel in an abundance of caution since the outcome of the action was a foregone conclusion without her voting her shares.

In March 2015, at the annual shareholder's meeting, the shareholders were asked to vote on the proposed slate of directors, which included Ebling but not Hasken. Hasken attended the meeting, but she "withheld" her vote.

The same month, Ebling's attorney sent Hasken an email asking her to resign her position as trust advisor and appoint Ebling her successor. Hasken refused to resign as trust advisor, and Ebling and Abby McDonald then filed their action.

Their petition alleged Hasken

ha[d] failed to perform the duties of a trust advisor, been negligent in managing the voting shares of A.Y. McDonald Industries, Inc., made mistakes in judgment sufficiently serious so as to indicate that the removal of her as trust advisor is necessary to save the trust property, and breached her fiduciary duty thus jeopardizing the value of the trust property and the interests of the beneficiaries thereof.

Ebling and Abby McDonald also asked the court to appoint Ebling as the successor trust advisor.

In February 2016, Ebling and Abby McDonald filed a motion for summary judgment. In their motion, the plaintiffs alleged that Hasken "acted under an impermissible conflict of interest" at the December 2014 special shareholders meeting when she did not attend the meeting and took no action with the 625 shares allotted to her as advisor. Ebling and Abby McDonald also asserted Hasken breached her duty on March 13, 2015, when the only agenda item was approving the slate of directors and Hasken "withheld" her vote. Ebling and Abby

McDonald maintained that because both votes impacted her individually, the only proper course of action for Hasken was to proxy her votes to a third party. Additionally, Ebling and Abby McDonald asked the court to appoint Ebling as the successor advisor to Hasken, noting that the trust instrument provides for the trust advisor to name their own successor "[i]n the event of the death, resignation, or inability" to serve; at the same time, Ebling and Abby McDonald argued that the court's removal of Hasken would not fall within either of three enumerated categories.

Hasken resisted the motion for summary judgment,[1] maintaining the trust instrument gave the trust advisor the right, but not the obligation, to vote one-half of the 1250 shares. She claimed her decisions not to vote and to withhold her vote did not implicate a fiduciary duty.

In May, the district court granted in part the plaintiffs' motion for summary judgment, ruling:

> The facts here are not in dispute. The only dispute is whether Hasken's failure or refusal to vote constitutes a breach of her fiduciary duty. Hasken herself admits that there was a conflict of interests [when, in] her memorandum of authorities, she describes "an obvious appearance of conflict of interest." Perhaps the most fundamental duty of a trustee is to display complete loyalty to the interests of the beneficiaries and to exclude all self-interests. If the trustees's individual interest is interjected into trust matters, he or she cannot remain independent or uninterested. . . .
> Hasken acted in her own self-interests, rather than putting the interests of the beneficiary first. . . . The undisputed facts demonstrate a conflict of interest and Hasken's decision to act on her own behalf, rather than to protect the interests of the beneficiaries. The plaintiffs' motion for summary judgment must be granted regarding the removal of Hasken as trust advisor.

---

[1] Hasken did not cross-move for summary judgment in her favor, and we consider the summary judgment record on the motion of Ebling and Abby McDonald.

(Citations omitted.) The court found there were genuine issues of material fact regarding whether Hasken was "unable to serve," within the meaning of the trust provision allowing a trust advisor to appoint their successor. Trial remained scheduled on the issue of appointing a successor trust advisor, but the issue was decided on briefs and argument.

In October, the district court issued a ruling. The court found persuasive Ebling and Abby McDonald's argument that the court's determining Hasken was "unfit" to serve was distinct from the trust instrument's provision allowing a trust advisor to appoint their successor when they are "unable" to serve. Ebling and Abby McDonald asserted Hasken was still "able" to serve, as evidenced by the fact she did so for a number of years and was still physically capable of doing so. In contrast, Hasken argued the language of the trust gave her the power to appoint her successor if she met the dictionary definition of inability, that is, "if she lacked the power, resources, or capacity to remain as trust advisor" and asserted the reason for her inability to serve was irrelevant. The court noted:

> If Hasken had been removed because she misappropriated trust assets, it would be illogical to allow her to appoint her successor. . . .
> Ms. Hasken is clearly "able" to serve as a Trust Advisor. She simply chose to put her own personal interests ahead of the interests of the trust (and the beneficiaries). She would be unable to serve if she became very seriously ill or suffered a debilitating cognitive injury. She would be unable to serve if she moved to a remote location where communication with the other Trust Advisor and the beneficiaries was not possible.

The court then officially appointed Ebling as trust advisor, on the basis that the second trust advisor was permitted to appoint the successor and Robert McDonald had proposed Ebling.

Hasken appeals.

**II. Discussion.**

**A. Preliminary Matters.**

Although it is unclear from the record before us whether the district court originally had personal jurisdiction over Hasken, she did not file a motion challenging it, so any possible issue has been waived. *See* Iowa R. Civ. P. 1.421(1)(b) (stating that lack of personal jurisdiction is properly raised by a pre-answer motion to dimiss), (4)(b) (providing the issue "shall be deemed waived" if not contained in a pre-answer motion).

Additionally, both parties agree that Illinois law controls in this case. Iowa Code section 633A.1108(2)(a) (2015) provides that "the meaning and effect of the terms of the trust . . . shall be determined by . . . the law of jurisdiction designated in the terms of the trust, on the condition that at the time the trust was created the designated jurisdiction had a substantial relationship to the trust." Though we apply Illinois law to the substantive questions involved in this appeal, we apply Iowa law to the procedural matters. *See Brooks v. Engel*, 207 N.W.2d 110, 113 (Iowa 1973) ("[P]rocedural matters and matters pertaining to the remedy to be applied must be determined by the law of the forum.").

We apply Iowa law to the procedural matters, and "[w]e review a ruling on a motion for summary judgment for correction of errors at law." *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005). "[W]e view the record in the light most favorable to the nonmoving party and allow that party all reasonable inferences that can be drawn from the record." *Wernimont v. Wernimont*, 686 N.W.2d 186, 189 (Iowa 2004).

**B. Removal.**

Hasken maintains the district court erred when it removed her as trust advisor. She claims she had no fiduciary duty to vote the trust's shares. Alternatively, she maintains that even if she breached a duty when she took no action with the trust shares, she should not have been removed because there was no harm or damages to Ebling and Abby McDonald. Ebling and Abby McDonald respond that it was not the omission of voting that constituted a breach of fiduciary duty but rather that Hasken's decision not to vote at the December 2014 shareholders meeting was made in her own self-interest rather than in theirs. They also assert that they need not establish they suffered damages in order to have Hasken removed as trust advisor.

We consider the parties' second argument first. In an action for breach of fiduciary duty, the plaintiffs have the burden to prove: "(1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *Janowiak v. Tiesi*, 932 N.E.2d 569, 583 (Ill. App. Ct. 2010). But the plaintiffs did not plead an action for a breach of fiduciary duty. Rather, they asked for the removal of a trust advisor, which is similar to the removal of a trustee.

The court has "inherent power" "to remove a trustee for breach of trust, misconduct or disregard of fiduciary duties." *Altschuler v. Chicago City Bank & Trust Co.*, 43 N.E.2d 673, 676 (Ill. 1942), *rev'd in part on other grounds by Yedor v. Chicago City Bank & Trust Co.*, 44 N.E.2d 604, 606 (Ill. 1942). And "the remedy for a breach of trust or failure to perform a duty by the trustee is [her] removal and the appointment of a new one." *Id.* However, under Illinois law, where it is the settlor's intent to have trustees who are officers or employees, the general fiduciary

rules are modified. *See Tankersley v. Albright*, 374 F.Supp. 538, 543 (N.D. Ill. 1974), *rev'd on other grounds*, 514 F.2d 956 (7th Cir. 1975).

> It is a common situation, for a testator who owns what he deems a good business, to include it in a trust and to appoint as one of the trustees, an officer or employee who is familiar with the business. His reasons are too patent to require comment. [The testator] chose among his trustees, two men who had been officers of the company since it was originally incorporated. It would be a strange rule of law to hold that the trustees were guilty of bad faith, self-dealing, or other improper conduct if they failed to resign their corporate positions, and thus discontinue the very reason for their selection.

*Id.* (alteration in original) (citation omitted). Where the testator, the trust document, or historical practice in administration of the trust shows the trustee—or in this case the trust advisor—is an active member of the company, the court will not interfere on the basis of conflicts of interest unless the trustee's act constitutes fraud, bad faith, dishonesty, or an abuse of discretion. *Id.* "It is well established that a trustee may occupy conflicting positions in handling the trust where the trust instrument contemplates, creates, or sanctions the conflict of interest." *Dick v. Peoples Mid-Illinois Corp.*, 609 N.E.2d 997, 1002 (Ill. App. Ct. 1993). "The creator of the trust can waive the rule of undivided loyalty by expressly conferring upon the trustee the power to act in a dual capacity, or he can waive the rule by implication where he knowingly places the trustee in a position which might conflict with the interest of the beneficiaries." *Id.*

Whether this modified standard is applicable here should be resolved during the process of trial. Arguably, the trust document specifically contemplates potential conflicts of interest because the trust advisor is contemplated to be part of the company. Paragraph 6 of the trust document provides "Nothing in this paragraph 6 shall be construed as imposing on any advisor at any time acting

hereunder any other additional obligation or liabilities with respect to his actions or non-actions as a director, officer, employee, or stockholder" of the company. In addition, the summary judgment record shows it has been a practice for the advisor to be actively employed by and involved in the management of the company. However, the trust instrument states, "The status of the advisor from time to time acting hereunder shall be that of a fiduciary and no advisor shall have any power or authority under any circumstances to act in a nonfiduciary capacity."

Even if a conflict of interest was not contemplated under the circumstances, the district court erred in granting summary judgment. "Generally, a trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degree of fidelity and utmost good faith." *Faville v. Burns*, 960 N.E.2d 99, 109 (Ill. App. Ct. 2011). "Further, a trustee owes a fiduciary duty to serve the interests of the beneficiaries with total loyalty, excluding all self-interests, and is prohibited from dealing with the trust's benefit for his [or her] own individual benefit." *Id.*

The district court concluded Hasken admitted there was a conflict of interest—as a matter of law—in its ruling to remove her as trust advisor. We disagree; as the court correctly quoted, Hasken admitted there was "an obvious *appearance* of conflict of interest." (Emphasis added.) In fact, she chose not to act at the December 2014 special board meeting—on the advice of counsel—in order to avoid such an appearance of conflict.

Viewing the evidence in the light most favorable to Hasken, there is a genuine issue of material fact whether Hasken's decision not to vote the shares allotted to her as trust advisor resulted in a conflict of interest. First, nothing in the

language of the trust instrument obligates Hasken to vote the shares allotted to her. Ebling and Abby McDonald concede in their brief that the trust instrument does not create "a duty to vote the shares in absolutely every circumstance." Moreover, Hasken's choice to take no action did not affect the ultimate vote; a quorum was still present. And while it is undisputed Hasken's decision not to vote was against the wishes of the plaintiffs-beneficiaries, there is no evidence her refusal to vote was against the interests of the beneficiaries. *Cf. Spencer v. Di Cola*, 16 N.E.3d 1, 12 (Ill. App. Ct. 2014) (stating case law "does not prohibit a trustee from interpreting a trust in a manner that is unfavorable to one beneficiary's wishes" (citing *Northern Trust Co. v. Heuer*, 560 N.E.2d 961(Ill. App. Ct. 1990))). A beneficiary's wish is not equivalent to a beneficiary's interest. *Id.*

"[R]emoval of a trustee is an extreme remedy." *Laubner v. JP Morgan Chase Bank, N.A.*, 898 N.E.2d 744, 467 (Ill. App. Ct. 2008). And "[n]ot every instance of mistake or neglect on the trustee's part requires the removal of the trustee." *Id.* "The court should remove a trustee only if the trustee endangers the trust fund and removal is clear." *Id.* Moreover, "[p]ersonal hostility between a trustee and a beneficiary is not a *per se* ground for removal of the trustee." *Id.*

Because there are genuine issues of material fact and we cannot say as a matter of law that Hasken's choice to take no action with the shares was against the interests of the beneficiaries, we reverse the district court's grant of summary judgment removing Hasken as trust advisor.[2] We remand for further proceedings.

**REVERSED AND REMANDED.**

---

[2] Because we reverse the court's ruling removing Hasken as a trust advisor, we need not consider whether she would have had the right to appoint her successor.